1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X
UNITED STATES OF AMERICA      )        17CR159
                              )
vs.
                                    Buffalo, New York
RONALD MITCHELL,              )     September 25, 2019
            Defendant.                  10:15 a.m.
- - - - - - - - - - - - - - X
**SENTENCE**


                        TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE ELIZABETH A. WOLFORD
                    UNITED STATES DISTRICT JUDGE


                        JAMES P. KENNEDY, JR., ESQ.
                        United States Attorney
                        BY: JOEL VIOLANTI, ESQ.
                        Assistant United States Attorney
                        6200 Federal Building
                        Rochester, New York 14614


                        MARIANNE MARIANO, ESQ.
                        Federal Public Defender
                        BY: FONDA DAWN KUBIAK, ESQ.
                        Assistant Federal Public Defender
                        28 East Main Street, Suite 400
                        Rochester, New York 14614
                        Appearing on behalf of the Defendant


COURT REPORTER:   Karen J. Bush, Official Court Reporter
                  (585) 613-4312
                  100 State Street
                  Rochester, New York 14614

P R O C E E D I N G S

\*        \*        \*

THE CLERK:  On the record, United States versus Mitchell, 17CR159.  We're here for a sentencing.  Counsel, please state your name and who you represent.

MR. VIOLANTI:  Joel Violanti, for the government.  Good morning, Judge.

THE COURT:  Good morning, Mr. Violanti.

MS. KUBIAK:  Good morning, your Honor.  Fonda Kubiak with Ronald Mitchell.

THE COURT:  Mr. Mitchell is in the courtroom.  In the courtroom, I think you have some family members, too, Mr. Mitchell.

UNIDENTIFIED SPEAKER:  Yes, and his father and grandmother are on their way up.

THE COURT:  Are they in the building.

UNIDENTIFIED SPEAKER:  They are on their way up.

THE COURT:  We're just going to do some preliminary introductory things.  You can have a seat, folks.

Let me first state on the record what I received and reviewed in connection with sentencing.  I have a Presentence Investigation Report.  I should mention, Officer

USA VS. R. MITCHELL

Ferrara is here from Probation as well.  I have a Presentence Investigation Report dated September 18th, 2019.  And I have the government's statement with respect to sentencing factors that was filed at docket 215.  I have the defendant's statement with respect to sentencing factors that was filed at docket 217.  And then I have the defendant's sentencing memorandum that was filed at docket 218, which has a number of exhibits attached to it, including various certificates, letters written by Mr. Mitchell as well as on his behalf, one written by Mr. Mitchell.  So I think I've stated everything that has been received in connection with sentencing.  But, let me first check with you, Mr. Violanti, anything that you think I've missed?

MR. VIOLANTI:  No, Judge.

THE COURT:  Can you confirm for me that you received the Presentence Investigation Report?

MR. VIOLANTI:  Yes, I did, Judge.

THE COURT:  Does the government have any objections to the report?

MR. VIOLANTI:  No, Judge.

THE COURT:  Okay.  Thank you.

Ms. Kubiak, can you confirm for me that I have stated everything submitted in connection with sentencing?

MS. KUBIAK:  Yes, you have, your Honor.

USA VS. R. MITCHELL

THE COURT:  Can you confirm for me that the defense received the Presentence Investigation Report?

MS. KUBIAK:  We did, your Honor.

THE COURT:  Did you review it with Mr. Mitchell?

MS. KUBIAK:  I have, your Honor.

THE COURT:  Mr. Mitchell, did you go over the Presentence Investigation Report with your attorney?

THE DEFENDANT:  Yes, I did.

THE COURT:  And does the defense have any objections to the report?

MS. KUBIAK:  No, Judge, the revised report on September 18th, 2019 addressed the one concern that I have and we adopt that report.

THE COURT:  All right.  I want to make sure that your father, they are not here yet?  Maybe they are coming in right now.  Good morning, folks.

UNIDENTIFIED SPEAKER:  Good morning.

THE COURT:  Let's come on in and you can have a seat.  Is everybody here from Mr. Mitchell's family.

UNIDENTIFIED SPEAKER:  Yes.

THE COURT:  Ms. Kubiak, is the defense ready to proceed?

MS. KUBIAK:  Yes, your Honor.

THE COURT:  Mr. Violanti, does the government move

USA VS. R. MITCHELL

to sentence Mr. Mitchell?

MR. VIOLANTI:  Yes, we do, Judge.

THE COURT:  Anything you would like to say before I sentence Mr. Mitchell?

MR. VIOLANTI:  Just briefly, Judge.  I know the PSR encompasses the defendant's criminal background and all of the information the Court needs before it to render a sentence with respect to the Guidelines.  And I know Ms. Kubiak filed a motion for the Court to consider and put some factors for the Court to consider with 3553.  I just think it's important for this case to let the Court know the type of case that is involved here because I think it's important for the Court to know when considering a higher sentence like this.  I had history with Mr. Mitchell.

THE COURT:  Did you prosecute the other case?

MR. VIOLANTI:  Yes, I did.  And that is why I feel compelled, Mr. Mitchell was involved in another case, it seems Mr. Mitchell seems to be in a habit that are cases involved in drugs, but he is involved in other cases that are much higher than the amount he is dealing when I was in another case with Judge Arcara.  He was in a multi-kilogram where individuals were bringing kilograms of cocaine from Puerto Rico to the west side Buffalo.  And Mr. Mitchell comes up to Jamestown to get involved to gets his supply from his little dealings in

USA VS. R. MITCHELL

Jamestown. We offered him a plea before trial, if I recall, was 18 months. There were issues and that is why he took it to trial. And we successfully convicted him and he ended up doing 84 months. That was his relevant conduct, that was based upon foreseeability that was involved in the conspiracy, a conspiracy that was much more involved than what he was at that time. We fast forward, he does his time, he is on supervised release and he is doing what his past history says, he is dealing drugs, but he is involved in a case that is a little bigger than he is again. Pruitt-Boyette, it was a case that originated from Buffalo down to Jamestown where Mr. Pruitt-Boyette was bringing drugs down there and having individuals like Mr. Mitchell buy from him and sell in smaller amounts, one gram amounts, and that is what he was essentially doing this, and because of his past and criminal history he is looking at the Guidelines he is looking at. I say that, I think it's important for the Court to know it. I make no comment with respect to what the sentencing should be. I think it's important for the Court to consider because it is a lot of time he is looking at, and based upon his criminal history, but I think those are important factors for the Court to consider here and I let the Court know for that reason.

THE COURT: Thank you, Mr. Violanti. One thing Ms. Kubiak, you may not be aware of, I don't remember if Mr.

USA VS. R. MITCHELL

Pruitt-Boyette stated this, if it was evidence from his attorney's sentencing submission, but in his PSR and the statement he made to Probation that was submitted to me in connection with his sentencing, he took full responsibility for leading the conspiracy here, and, specifically said, "I got Ronald Mitchell back into selling drugs." So, I just think in fairness you should be aware of that.

MS. KUBIAK: Thank you, your Honor. And I'll comment in my overall sentencing statement with respect to some of that?

MR. VIOLANTI: Judge, was that Mr. Pruitt-Boyette had said that?

THE COURT: Yes.

MR. VIOLANTI: I think that is consistent with the government's investigation as well, Judge.

THE COURT: Quite frankly, I thought when I look at the other sentences that were imposed in this case, you know, Mr. Mitchell is facing a significant lot more time and he is not at the level in this conspiracy that Mr. Pruitt-Boyette was, who clearly took responsibility. And I think there was a fair argument that could be made that Mr. Pruitt-Boyette, maybe, should be sentenced at a higher end of the Guidelines versus the lower end of the Guidelines, but, in part, the reason I didn't do that was because he came in and took

USA VS. R. MITCHELL

responsibility in a very straight forward manner I thought at the time of sentencing.

MR. VIOLANTI:  And, Judge, I think that is what the Court -- what the Court is saying now is what prompted my initial comments to the Court.  I think we share the same view on it.  Mr. Mitchell right from the get go, although it look a while, he wanted to come in and plead guilty.  His numbers were up higher, he could have saved himself time, but it wasn't in the cards and that is what prompted my statements.

THE COURT:  I'll give you my initial reaction before you make any statement.  And, again, I look at where the other defendants were sentenced in this case and I look at Mr. Mitchell's Sentencing Guidelines and they are in a totally different realm.  On the other hand, I look at what he was sentenced to in front of Judge Arcara, which was more than what any of the defendants had been sentenced to in this case and that didn't seem to do the trick in terms of ensuring that he didn't get back involved in the drug trade, which he clearly did and was involved in even after he was on supervised release.  So, as a sentencing judge, I look at this and I'm struck by, you know, the highest that anybody was sentenced of the codefendants is 70 months, but yet Mr. Mitchell was sentenced to 84 months by Judge Arcara and did the same thing when he was on supervised release.  So one would say, well, any

USA VS. R. MITCHELL

sentence, even if it isn't in the Guideline range, at least, has to be, if not what it was in front of Judge Arcara, perhaps a little bit higher, that is my reaction in looking at this. I'm certainly interested in what the reaction of the attorneys who are more familiar with the facts of this case.

MR. VIOLANTI:  Judge, I think your thought process is right on.  I think it's fair and I think Ms. Kubiak will bring some other points up for you to consider.  And I'm sorry I can't take a more, I think this should be the sentence, because I share the Court sentence, I prosecuted him before, he continues, he is on supervised release and he does it again. But I think it's important for the Court to know we never thought of Mr. Mitchell as a big time supplier.  We thought it was just another individual who was continuing to sell drugs and has to get his supply somewhere.  Unfortunately, he is caught up obtaining his supply from other individuals that are involved in a much larger investigation.  Even during the trial he was polite.  Even during the trial, "Good morning, Mr. Violanti."  I'm prosecuting him, "Good morning, Mr. Violanti." At sentencing, "Thank you, Mr. Violanti."

THE COURT:  People like you, Mr. Violanti.

MR. VIOLANTI:  Not everybody.  I'm not asking for a sentence.  I want, in fairness to Mr. Mitchell, the Court to know everything I know.

USA VS. R. MITCHELL

MS. KUBIAK:  Judge, and I think that is the sentiment that Mr. Violanti just expressed to you is the sentiment that every single person who comes in contact with him has.  In the courtroom are four people from the Cattaraugus Public Defender's Office, who took time out of their busy, busy schedule to drive up to here to support Mr. Mitchell because of their contact when they go in the jail to meet with other individuals, to meet with him and talk to other individuals about what he has done to mentor.  I've never seen that, Judge. They've driven up to say what Mr. Violanti would say and what I would say after representing thousands of criminal defendants, Mr. Mitchell has always been kind polite, kind, caring, addressed his circumstances with a quiet reserve.  He doesn't make excuses.  He doesn't minimize.  He understands the circumstances that he is facing and he has accepted that.  And what he has done in the last three years has taken steps to make his mess his message.  He has been involved in moderating and facilitating programs in the Cattaraugus County Jail that have been state recognized.  And so he said, hey, I've made a lot of mess of my life, but I'm not going to let that define me, I'm not going to move forward with that being a burden. I'm going to let that help other people to learn from my mistakes and put myself, hopefully for the final time, in the position to be successful.  And I understand, Judge, with

USA VS. R. MITCHELL

respect to coming back out after having served a significant period of time in custody and reverting back to the only way of life he has ever known, there is no excuse for that. And he understands that, but I think, Judge, having been involved in the reentry program that this Court has run for over a year and a half, I think we do a very poor job of really providing substantial assistance to defendants when they come out of a lengthy of period of incarceration. We do not put the resources that are necessary into reintegration with success. And I think that Mr. Mitchell fell victim to that. And I applaud the fact that we tried to integrate a viable option for reentry, but we didn't have the resources. We do not have the employment resources, the education resources, and the stake holders in this community to make these individuals successful.

THE COURT: So what is going to be different this time? Because I'm not so convinced the resources will be any different.

MS. KUBIAK: I agree, Judge, they probably won't be. But Mr. Mitchell knows that. But Mr. Mitchell and I have spent a substantial period of time discussing that. And one of the things he conveyed to me, he wants to be one of the people that comes out and implements a viable program. He mentioned the Delaney Street program. There is a Delaney Street that has been implemented in other areas, and he wants to learn from

USA VS. R. MITCHELL

that program and come back out and work with the people in the community to make it a successful program.  He wants to help.  He has been through it.  He knows what is needed and he wants to be on the ground floor, if nothing is in existence then, to come out and try and formulate with the people in the community, with the contacts that he has through the programs he has been involved in in Cattaraugus County Jail and build that from the ground up.  And so, you know, he has the support of the individuals that he is associated with who have written letters to you, he has the foundation with respect to some of those programs of what's been instrumental in helping current inmates and the really it's a linking of him with organizations and stake holders to try and build that program.  And I think he can utilize the time he will be in custody to try and build that.  So he is committed to doing that.  I think he will.  I think the past three years is an indication to your Honor that this isn't just a passing whim.  That he is really dedicated to doing that.  And I don't think you would have gotten the letters that you received from the two pastors if this is some I'm going to give lip service to this and not really mean it authentically and embodied it in himself.  And I don't say this about all of my clients, Judge, because it comes back to haunt me, but I'm going to say it for Mr. Mitchell.  I truly, truly believe that he, this time, will put the foundation in place to

USA VS. R. MITCHELL

be successful.  I think he is committed to doing that.  I think he has made contacts in the community that will give him that assistance when he is released.  His family is here, they are clearly supportive of him.  And so, if he, if he can just grab onto those resources that are committed to his success and believe in himself, which I think he finally does believe it in himself.  He will be successful, Judge.  I really do believe that and I think what Mr. Violanti said is accurate.  The case in front of Judge Arcara, there is no greater trial penalty from exercising your right to trial than the fact he was facing 18 months if he had taken a plea and he got 84 after trial. And that is unfortunate and I think --

THE COURT:  That was a Guideline sentence, right?

MS. KUBIAK:  Yes, Judge.

MR. VIOLANTI:  Yes, it was relevant conduct that we would argue he could have technically have faced some mandatory minimums as well, but it wasn't.  I think, Judge Arcara recognized the proof, you know, even though we were able to show at trial more involvement as it goes to foreseeability in the conspiracy, it was still a lot more time than what we offered by way of a plea.

MS. KUBIAK:  And that is typical of everyone I represent, Judge.  And as much as we try to explain to individuals the consequences they face if they go to trial, if

USA VS. R. MITCHELL

they haven't had a federal case before, they tend not to believe counsel when we tell them the realities of the situation.  And I'm not saying that that was Mr. Mitchell's circumstance, I didn't represent him back then, but I think that played into a part of it.  But, in this case, it was never about whether he was going to take a plea.  There were a lot of things happening with respect to litigation surrounding whether he was ultimately going to be a career offender and we needed to play that out and let those cases go through the Supreme Court.  And at the end of the day, it was determined that the robbery would count.  And once that was done, he took the plea. It was never about him not accepting responsibility for his involvement, he was always willing to do that.  It was really where we were going to land with respect to those cases.

And he, I think, in his letter to you, and his acceptance of responsibility, he is not minimizing it.  He recognizes, I came back out and I got myself involved in people that I shouldn't have been hanging around with.  I got desperate and out of despair, I re-engaged with Mr. Pruitt-Boyette and got myself into something much bigger than what he was ultimately doing.  He was obviously dealing low level amounts of drugs to try and support himself and instead of taking a step back and leaning on the resources that he could have to try and get some, you know, well paying

USA VS. R. MITCHELL

employment and that is on him and he accepts that, and he knows that, and he knows he needs to be held accountable for that and he is going to go to jail for that, no question.  What I think is significant, though, is even at a criminal history category 6, and the amount of drugs that he was involved in, his Guideline range would be 33 to 41 months, Judge.  And I've handled a lot of career offender cases over my career and that is over a four fold increase.  That is a significant and substantial career offender enhancement.  I've never had that great of a jump in where he would otherwise be just for this case at a criminal history category 6 and take him to where he is.  So, I think for a low-level drug dealer, even at a criminal history category 6, that four fold increase is substantial, Judge, and I have other career offenders who maybe it's --

THE COURT:  I think Robert Boyd may have been in a similar circumstance.

MR. VIOLANTI:  Yes, Judge.

THE COURT:  There was, he ended up being a career offender, but that wasn't what had been calculated pursuant to the plea agreement.

MR. VIOLANTI:  I believe that was the one.

THE COURT:  That was, he was 18 years old and had a conviction for marijuana in Georgia.

USA VS. R. MITCHELL

MR. VIOLANTI:  Yes.

THE COURT:  That ended up triggering him as being classified as a career offender and the Guideline range he was facing was significant.

MS. KUBIAK:  And I think that happens a lot with the career offender enhancement.  And while it's there and I understand the purpose of it, I think he could still be sufficiently sentenced with respect to his criminal history and the conduct in this case and not arrive at that level.  Judge, you know, he had, as I noted in my sentencing memorandum, he had a very traumatic and difficult childhood.  And I don't want to go through the litany of things that he endured, but he endured more than most of us could.  And, unfortunately, he felt safer on the streets sometimes than he did in his own home given what he endured, but he has put that behind him.  His family is here.  They are supportive.  He has tried to mend fences from that difficult past, and he doesn't like to talk about it and I'm not going to ask him to talk about it.  But he has gone through a lot, Judge, and so, again, not an excuse, but when you look at all of the factors and you look at who Mr. Mitchell is, I think the Court, I hope, will get an impression of him, that is something different than he is a criminal history category 6.  And the fact that there is a courtroom full of people supporting him, the fact that Mr. Violanti would

USA VS. R. MITCHELL

agree that he is always been respectful and polite, and, you know, not as big as the balloon that he gets himself involved in and he suffers the consequences, but I think overall there is enough redemption here for you to take a chance on him and I'm asking you to do that.  And I think that he believes in himself now when he didn't believe in himself before.  And the fact that he wants to make other people's lives better, the fact that he has recognized how he has impacted people who he sold drugs to, he is going to talk about that, I believe, Judge, I believe, about sitting and facilitating groups with people that used controlled substance that he has sold has had a significant impact on him.  And he doesn't want to be a part of that and make that fateful choice for somebody else and put them in a position with respect to their addiction.  He doesn't want to be involved in that anymore.

And so, you know, to the extent that three years in a local county jail has had an impact, I think it has.  I can't always say that.  But he has taken advantage of every single program that has been available for him.  He has been a mentor to other individuals.  And I think his soul has been moved with respect to what he has learned in the groups and the people he has come in contact with.  So that coupled with everything else I put in my sentencing memorandum, Judge, I would ask that you take that into consideration and impose a

18

USA VS. R. MITCHELL

sentence that is sufficient but not greater than necessary under all of the 3553(a) factors.

THE COURT:  Thank you, Ms. Kubiak.

Mr. Mitchell, the law allows to you address me before I sentence you.  Is there anything you would like to say?

THE DEFENDANT:  Yes, thank you.  People have said, as we just heard, like a bunch of really nice things about me and I appreciate that.  For the past two weeks, I've been trying to think about what I would come in here to say to you to help me.  And I've asked several people what they thought or what they think I should say to help me as well, and I didn't feel right, although they told me some really good things to say, and that I still didn't feel right in my spirit and wasn't until last night while thinking again, while thinking about what I would say to you, I realize that this day isn't about me.  And I appreciate everything everybody said about me, this day isn't about me.  It's about the victims of my crimes.  It's about the people I sold drugs to and their families and their victims and about their kids, so I just, I don't feel right talking about how much good I've done.  People say I've did and, you know, although, you know, I appreciate everybody, everything you guys said about me.  I wrote a letter for the people that are here today.  If it's okay with the Court that I

USA VS. R. MITCHELL

read it.

THE COURT:  Sure.

THE DEFENDANT:  Thank you.

THE COURT:  I just caution you, don't read fast. Sometimes when people read something, especially when they are in court, they tend to read faster.  Take your time.  I want to make sure my court reporter gets everything down.

THE DEFENDANT:  All right.  Thanks.  First, I want to thank you all for being here on account of supporting me. This letter is an expression of my appreciation toward you all. You all are a part of the reason why today I can and do accept responsibility for what my life was yesterday, what it is today and what I plan to -- and what I plan my life's tomorrow's to be.  Over the last three years, you all have shown me through your incessant efforts for my civil redemption a degree of heart that continuously feeds my decisions to trust in the person God willed me to be and my capability to love my neighbor as myself.  Before I allowed your efforts in my life, I was self-centered, scared and clueless to my life's problems. Your efforts from your start were the lights I needed to look in my closet to see the threat I knew was there.  To my surprise when I looked in that closet, I found I was standing face-to-face with myself.  I saw how self-centered and uncaring I had become toward others and myself.  And after looking in

USA VS. R. MITCHELL

that closet seeing myself, I continue to see your caring efforts and I used them as my motivations to become who I am today.  Because of your efforts -- today because of your efforts I'm someone who looks at what I was and feel ashamed when I think about the people I hurt directly and indirectly.  Today, because of your efforts, I'm someone who is willing to dedicate everyday of my life whether incarcerated or not to giving others the care and faith to work their revival you all have given me.  Thank you all again.  I love you all.  And I ask you to continue to pray for the healing of the victims of my crimes.

And, Judge, I feel like me sitting in jail isn't enough to make amends to those victims of my crimes, yet I know it's a start, so I fully accept whatever sentence you give me today.

THE COURT:  Thank you, Mr. Mitchell.  I am prepared to sentence you, Ronald Mitchell.  In that regard, as I indicated, I've had an opportunity to review the Presentence Investigation Report dated September 18, 2019, as well as all of the other submissions to which I previously referred.  I reviewed all of those submissions very carefully.  I've listened carefully to all of the comments that have been made here in court today, including your comments, Mr. Mitchell.  You stand before me, you're 37 years old, and you're being

USA VS. R. MITCHELL

sentenced after pleading guilty to possession with intent to distribute and distribution of cocaine in violation of Title 21 U.S.C. Section 841(a)(1) and (b)(1)(C).  It's considered a class C felony.  The maximum sentence that can be imposed is 20 years in prison, up to a 1 million dollar fine, and at least three years up to life of supervised release my be imposed.  Now, on April 5th, 2019, you appeared before me and you pled guilty.  And your plea was by way of a written plea agreement pursuant to the Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure.  And what that meant was your plea was entered into with the understanding and appreciation that it could not be taken back, the calculations and recommendations set forth in the plea agreement were not binding on me.  You and the government agreed that the Guideline calculation would be 151 to 188 months in prison, and neither of you would argue for a sentence outside of that range.

Now, as I explained at the time of your plea, sentencing in this action is pursuant to the Sentencing Reform Act of 1984.  In deciding on a reasonable and appropriate sentence, I have a responsibility to impose a sentence that is considered sufficient, but not greater than necessary to comply with the objectives of sentencing set forth at 18 U.S.C. Section 3553(a).  Ms. Kubiak has indicated that she received a copy of the Presentence Investigation Report and reviewed it

USA VS. R. MITCHELL

with you.  You've told me that you went over the report with your attorney.  There have been no objections to the Presentence Investigation Report, so, therefore, I'm going to adopt the statements that are contained in that report as my findings of fact.  Now, the Sentencing Guidelines are no longer mandatory, they are advisory, but they are the first step that I have to go through before I impose a sentence.  And I do find that the calculations and recommendations set forth in the Presentence Investigation Report are correct.  So what that means is pursuant to 2D1.1(c)(12) of the Sentencing Guidelines, because of the amount of drugs involved in the offense at least 100 grams but less than 200 grams of cocaine, there is a base offense level of 16.  Then that jumps up to a 32 because of the fact that you are characterized as a career offender based on your conviction in Erie County court of attempted robbery first degree on October 9, 1999, and then your conviction in this court, U.S. District Court, Western District of New York of conspiracy to possess with intent to distribute and to distribute less than 500 grams of cocaine that occurred on December 15th, 2014.  As a result, pursuant to 4B1.1(b)(3) of the Sentencing Guidelines, your offense level goes up to a 32, essentially doubles.  I do find pursuant to 3E1.1(a) and 3E1.1(b) you clearly have accepted responsibility for your conduct, so there is a three-level decrease in the offense

USA VS. R. MITCHELL

level, and it takes your offense level to a 29.  Now, based on your criminal history that is set forth in the Presentence Investigation Report, you are a criminal history category 6. You would be a criminal history category 6 as a career offender as well, but you qualify as a criminal history category 6 based upon your criminal history regardless of being characterized as a career offender.  That is because you have a criminal history score of 12, and then you committed the instant offense while under a criminal justice sentence, as a result, two points are added, that makes your criminal history score a 14.  Your criminal history category a 6.  So with an offense level of 29, a criminal history category of 6, the Sentencing Guidelines would recommend a prison sentence of 151 to 188 months; three years of supervised release; and a fine of $30,000 up to 1 million dollars.

Now, in addition to the Sentencing Guidelines, I have also considered all of the other factors set forth at 18 U.S.C. Section 3553(a) to determine a sentence that is sufficient but not greater than necessary to comply with the objectives of sentencing set forth in that statute. Specifically, I've considered the nature and circumstances of your crime, your history and characteristics, the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the

USA VS. R. MITCHELL

offense, afford adequate deterrence to criminal conduct, protect the public from any further crimes that you might commit, the need to provide you with any needed educational or vocational training, medical care or other training in the most effective manner as well as the kinds of sentences, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

So, I'll start with you your background. And I won't get into the specifics, but it's clear you had a chaotic childhood in many respects. You have a substance abuse issues, mental health issues, you have a 14-year-old daughter. Your post-offense rehabilitation certainly over the past three years while in custody has, I agree, been remarkable, and it is not something that you typically see as a sentencing judge. Particularly, I mean, oftentimes I'll hear defendants lament the fact that they've been in local jail and they haven't had the opportunity to take advantage of programs. And you clearly have, with some help, I think, found a way to take advantage of the time. And your letter that you wrote to me, I thought, was very inciteful. I appreciate the fact that you didn't send me the 18-page letter that you initially wrote, but I thought the poem that you wrote, it's clear to me, Mr. Mitchell, you are a bright guy. I think in large part where you are in your life right now ultimately because you make choices. Life is about

USA VS. R. MITCHELL

choices. But, unfortunately, I think you are where you are in your life right now as well because you had a number of challenges, based on your upbringing and what your what you perceived your options to be. And I think it's clear to me in reading your letter and reading the poem and reading what other people have written about you and listening to you and your insight about the effect that your drug trafficking has had on other people, you're a very bright individual. And I think you have a lot of talent. And I think that if you, not that it isn't going to be challenging, but if you direct those abilities that you have in the right way as opposed to the wrong way, you really could make a meaningful impact on society and in the community. And let's face it, you're a young guy, you have your whole life ahead of you, regardless of what sentence I impose. You will have an opportunity to turn things around once you get released. I've considered the Sentencing Guidelines, and the impact that the career offender calculation has. Now, it doesn't skew, as it often does for defendants, it doesn't skew your criminal history category. Your criminal history is significant. It dates back to you being 16, and you had poor adjustments at that time to probation, disciplinary problems in prison. Twenty years ago when you were, I guess, 17, and you had this attempted robbery conviction from November of 1999, granted it was a long time ago, but the facts of that

26

USA VS. R. MITCHELL

case, as set forth in the Presentence Investigation Report, are troubling to say the least with holding an imitation pistol to a 14-year-old's head during an attempted robbery of a home.  I don't think you're that person as you're standing in front of me today.  I mean, you clearly continued to be involved and in criminal offenses since then.  You have felony drug convictions in state court and then one in this court when you went to a jury trial that was in September of 2013, you were sentenced in December of 2014 to 84 months in prison, plus three years of supervised release.  As we've said, the instant offense was committed while you were under supervised release by our District's Probation Department.  There is a history of violent acts in your criminal history, but they are older convictions, and I think reflect some of the problems maybe you were having in your more youthful days than you have been now where you're engaged in the drug trade.  But the drug trade, as you recognized, is harmful to people.  And it does harm communities.  Your other defendants that were sentenced in this case, as I have mentioned, the highest sentence I imposed was 70 months in prison, that was for both Melvin Ingram and Mr. Pruitt-Boyette.  Mr. Pruitt-Boyette was the leader and he took responsibility.  And I imposed for both him and Melvin Ingram Guideline Sentences, granted at the low end of the Guidelines, but Guideline sentences.  Mr. Boyd and Mr. Siafakas, I did not

USA VS. R. MITCHELL

impose Guideline sentences.  They were both non-Guideline sentences.  Based on, at least, my reading of the Presentence Investigation Report, including the information in paragraph 11, while you were not a leader, you also, I don't think, could be characterized at the extremely lower level that Mr. Siafakas and Mr. Boyd were.  I mean, they each had different factors that I considered as to why I imposed the sentence that I did.  But, at least according to paragraph 11, while a street-level drug distributor and that is what it characterizes you as, you were tasked with more responsibilities than either Boyd or Ingram, and you, at least to some degree, were recruiting others to become involved in the drug trafficking conspiracy that you were involved in.  I appreciate the fact that you were dealing cocaine in the thousands of dollar range, not the hundreds of thousands of dollars range, which, oftentimes, you'll see a Guideline recommendation where you're at when you're dealing with kilograms of cocaine as opposed to the amount of drugs that you were involved in.

So based upon, you know, let me say this, sentencings are the most difficult part of my job.  No question about it.  And I think a Guideline sentence here is too high, but then I come out, once you get outside, the Guideline sentence, where do I land at, so to speak?  So I look at what I sentenced Mr. Pruitt-Boyette and Mr. Ingram to, which is 70

USA VS. R. MITCHELL

months in prison, but that is below the sentence that you received in front of Judge Arcara, and I have a real problem with the concept of sentencing a defendant who is under supervised release by our Probation Department and becomes involved in this similar type of conduct that landed him there in the first place. So I don't think it would be appropriate to impose a sentence that is less than what you received otherwise. Granted, I know two totally different types of crimes, two totally different judges, but I think it would be inappropriate to be sentencing you below what you previously received a sentence at.

So based on my consideration of all of the 3553(a) factors, I think a 90-month prison sentence is what's appropriate in this case. I think that is sufficient, but not greater than necessary to comply with the objectives of sentencing set forth in the Sentencing Reform Act. So, therefore, pursuant to the Sentencing Reform Act of 1984, it's the judgment of the Court that you, Ronald Mitchell, are hereby committed to the custody of the Bureau of Prisons for 90 months. The cost of the incarceration fee is waived. Now, the Guideline range in this case exceeds 24 months. The reasons that I'm imposing a non-Guideline sentence below that range is for all of the reasons that I stated here on the record. Upon release from prison, you shall be placed on supervised release

USA VS. R. MITCHELL

for three years.  You must report in the Probation Department in the federal judicial district where you are authorized to reside within 72 hours of your release from prison unless the probation officer instructs you to report to a different probation office or within a different time frame.  While on supervised release, you shall not commit another federal, state or local crime and shall be prohibited from possessing a firearm, ammunition or other dangerous device.  In addition, you shall not possess a controlled substance and shall comply with the standard conditions adopted by this Court, and shall comply with the following additional conditions.  You shall comply with the collection of a DNA sample in accordance with the Justice for All Act since the instant offense occurred after September 13th, 1994 drug testing is required by the 1994 Crime Control Act.  You shall participate in a program for substance abuse, including substance abuse testing such as urinalysis and other testing and shall undergo a drug/alcohol evaluation and treatment, if substance abuse is indicated by the testing.  The probation officer will supervise the details of any testing and treatment, including the selection of a treatment provider and schedule.  If inpatient treatment is recommended, however, it must be approved by the Court, unless you consent.  You're not to leave treatment until complete or is ordered by the Court.  While in treatment and after

USA VS. R. MITCHELL

discharge from treatment, you're to abstain from the use of alcohol, you're required to contribute to the cost of services rendered.  You shall participate in a mental health treatment program, including a mental health evaluation and participate in any treatment recommended.  The probation officer will supervise the details of any testing and treatment including the selection of a provider and schedule.  If inpatient treatment is recommended, however, it must be approved by the Court unless you consent.  You're not to leave treatment until complete or is ordered by the Court.  While in treatment or taking psychotropic medications you shall abstain from the use of alcohol.  You're required to contribute to the cost of services rendered, you shall submit to a search of your person, property, vehicle, place of residence or other property based upon reasonable suspicion and permit confiscation of any contraband or evidence discovered.

I find that you do not have the ability to pay a fine, and, therefore, any fine in this case is waived.  You do have to pay the $100 mandatory special assessment.  That is due immediately.  While incarcerated, payments shall begin under the Bureau of Prisons Financial Responsibility Program, and payments shall be made to the Clerk, U.S. District Court, attention Finance, U.S. Courthouse, 2 Niagara Square, Buffalo, New York 14202.  I will recommend that you be allowed to

USA VS. R. MITCHELL

participate in the RDAP program while in the Bureau of Prisons.

Ms. Kubiak, you also requested that he be permitted to participate in the occupational education program?

MS. KUBIAK:  That's correct, Judge.  It will be dependent on which facility he ends up being designated, but to the extent they have it, I ask for the designation.

THE COURT:  Do you have a request as to where he is housed?

MS. KUBIAK:  No, Judge, just within the closest possible to the Western New York area is fine.

THE COURT:  All right.  I'll make that recommendation as well.

Now, Mr. Mitchell, excuse me, pursuant to the plea agreement, you've waived the right to appeal the sentence that I just imposed because it's less than the range set forth in the plea agreement.  However, if you did want to attempt to pursue an appeal, you would have to file a Notice of Appeal within 14 days after the judgment is entered in this case.  And if you could not afford to pay the cost of an appeal, you would have the right to apply to proceed in forma pauperis.

Are there open counts of the indictment to dismiss?

MR. VIOLANTI:  Yes.  He pled to count 11.  We move to dismiss Counts 1, 9 and 10, the other charges he was charged

USA VS. R. MITCHELL

in.

THE COURT:  They are hereby dismissed any other requests or request the Ms. Kubiak.

MS. KUBIAK:  No, your Honor.  Thank you very, very much.

THE DEFENDANT:  Thank you.

MR. VIOLANTI:  Thank you.

THE COURT:  Officer Ferrara, anything I missed?

PROBATION:  No, your Honor.

THE COURT:  Thank you, Mr. Mitchell.

*    *    *

CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.

S/ Karen J. Bush,   RPR

Official Court Reporter